UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JAIME REYES

                        Plaintiff,

**CV-13 0441**

- against -

**VERI**

**SPATT, J.**

THE COUNTY OF SUFFOLK,

**Jury Trial Demanded**

                      Defendant.
-------------------------------------------------------------------X

**BROWN, M. J.**

Plaintiff, JAIME REYES, by his attorneys, CAMPANELLI & ASSOCIATES, P.C., as
and for his complaint respectfully alleges as follows:

## I      <u>Nature of This Action</u>

1.      This is a civil action seeking a declaratory judgment, injunctive relief,
compensatory damages, costs and attorneys' fees, brought pursuant to 42 U.S.C. §§1983 and
1988, to redress deprivations, under color of law, of rights, privileges and immunities guaranteed
by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, brought by
the owner of a motor vehicle that was seized and retained by the defendant County of Suffolk.

1

## II    Jurisdiction and Venue

2.      Jurisdiction of the court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution and laws of the United States.

3.      The plaintiff seeks declaratory relief, injunctive relief, and compensatory damages pursuant to 28 U.S.C. §§ 2201(a) and 2202.

4.      The plaintiff seeks reasonable attorneys' fees as part of the costs authorized to the prevailing party in an action pursuant to 42  U.S.C. §1983, predicated upon 42 U.S.C. §1988 and 42 U.S.C. §2000.

5.      Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in Suffolk County, New York.

## III    The Parties

6.      Plaintiff, JAIME REYES is an individual residing at 54 Peconic Road, Hampton Bays, within the County of Suffolk, State of New York.

7.      Upon information and belief, the defendant COUNTY OF SUFFOLK is a municipal corporation organized and operating under New York State law, with a principle place of business situated at 100 Veterans Memorial Highway, Hauppauge, NY.

## IV    Preliminary Facts

8.    At all relevant times described herein the plaintiff, JAIME REYES, was the owner of a 1995 Dodge Durango bearing Vehicle Identification Number 1D8HB58D25F508980.

9.    On August 23, 2012, the defendant County of Suffolk seized the plaintiff's vehicle, pursuant to a DWI seizure program within which it: (a) seizes and retains possession of motor vehicles incident to DWI arrests, and (b) subjects such vehicles to civil forfeiture, as "the instrumentalities of a crime."

10.    The seizure was made in connection with the arrest of the plaintiff's uncle, who was operating the plaintiff's vehicle without the plaintiff's knowledge.  The alleged statutory basis of the defendant's authority to seize and retain possession of the plaintiff's vehicle was Suffolk County Code §270 *et seq*.

11.    Under the constraints of the 14th Amendment to the United States Constitution, the defendant is required to afford vehicle owners, such as Mr. Reyes, Due Process, before effectuating a continuing deprivation of their vehicles.

12.    After the City of New York, and both the Counties of Nassau and Suffolk had each implemented DWI seizure programs, in the matter of Krimstock v. Kelly, the U.S. District Court, Southern District of New York, entertained a challenge to the Constitutionality of New York City's seizure and continued retention of motor vehicles from respective owners whom had not been convicted of any crime.

13.     In 2002, on appeal from the Southern District, the U.S. Court of Appeals for the

Second Circuit explicitly ruled that to comport with the constraints of the Due Process Clause of

the 14th Amendment, a municipality which seizes and seeks to retain possession of a motor

vehicle under a DWI seizure program must provide the owner of such vehicle with a prompt

"retention hearing" before a "neutral hearing officer" at which the respective owner may

challenge both the initial seizure of the vehicle, as well as the continued retention thereof.

Krimstock v. Kelly, 306 F.3d 40 (2nd Cir.2002).

14.     In rendering such ruling, the Second Circuit explicitly set the standard that to

comport with the constraints of Due Process, a municipality cannot retain continued possession

of a seized motor vehicle unless it affirmatively establishes at a hearing, before a neutral hearing

officer: (a) the validity and probable cause for the underlying arrest and seizure; (b) that the

municipality is likely to succeed on the merits of a forfeiture action and (c) that no means short of

retention can protect the municipality's interests in the respective vehicle against destruction or

sale during the pendency of a forfeiture proceeding.

15.     Contemporaneously, §270-26(B)(1) of the Suffolk County Code independently

requires the County to establish that: (a) the County is likely to succeed on the merits of a

forfeiture action, (b) retention is necessary to preserve the vehicle from destruction or

sale during the pendency of a forfeiture proceeding, and (c) no other measures would

protect the County's interest during the proceedings.

4

16.    In direct defiance of both the 14th Amendment Due Process requirements articulated in Krimstock and the requirements of the Suffolk County Code, the defendant has systematically, deliberately and continuously refused to acknowledge, or comply with, the constraints of Krimstock, and have contemporaneously refused and/or failed to comply with the constraints of the Suffolk County Code.

17.    Instead, the Suffolk County Executive has appointed "hearing officers" who, at virtually every hearing, merely require the County to establish "probable cause" for the initial arrest and nothing more.

18.    Once "probable cause" for the initial arrest is established, the County Attorneys then proceed to assert, and the hearing officers accept, that the "burden" of proof has shifted to the vehicle owner to establish hardship, in the absence of which, the hearing officer directs the County to retain possession of the vehicle at issue.

19.    Consistent with this policy, the defendant afforded the plaintiff a retention hearing at the conclusion of which, the hearing officer directed that the County retain possession of Mr. Reyes' vehicle based upon a finding that the "owner/operator has not established a hardship for return of the vehicle."

20.    During the retention hearing, both the County and the hearing officer presiding over it, failed to address, much less establish, the criteria articulated in Krimstock.

21.    Despite same, at the conclusion of the hearing, the County's hearing officer directed that the car be retained by the County, and concomitantly, the County has refused to release it to the plaintiff.

5

22.     In addition, at the conclusion of the hearing, a representative of the hearing tried to persuade the plaintiff to surrender title to his vehicle to the County, or face: (a) a civil lawsuit from the County, or alternatively, (b) substantial storage charges which he would be required to pay, in the event that the County's civil lawsuit were unsuccessful.

23.     Upon his refusal to surrender title to his vehicle to the County, the County abstained from filing any such lawsuit, but simply retained the vehicle, and continued to deprive the plaintiff of both the possession and use of his vehicle, from September 20, 2012 through the present.

24.     As further detailed herein below, the defendant has deliberately and wilfully continued to implement and maintain their constitutionally infirm practices of systematically ignoring the dictates laid out by the U.S. Court of Appeals for the Second Circuit in Krimstock, despite the fact that the defendant's agents are acutely aware of Krimstock and its mandates.

25.     On October 19, 2010, in the matter of Boyle v the County of Suffolk, 2010 WL 4340627 (2010 E.D.N.Y.), United States District Court Judge Joanna Seybert rendered a decision against the defendant in the United States District Court, Eastern District of New York, wherein Justice Seybert ruled, in explicit detail, what burdens the defendant County must be required to meet by any hearing officer, and what burdens the County must actually meet, at its vehicle retention hearings, to enable the County to retain physical possession of an owner's vehicle, while comporting with the requirements of Due Process.

26.    In direct defiance of that ruling and <u>Krimstock</u>, the County, the Office of the Suffolk County Attorney, and the hearing officers, who are appointed by the County to preside over vehicle retention hearings, have completely ignored Justice Seybert's ruling, as well as the dictates of <u>Krimstock</u> which Justice Seybert's decision laid bare in perfectly clear detail.

28.    Nine (9) months after Justice Seybert's decision in <u>Boyle</u>, the County afforded the plaintiff a "retention hearing" at which, once again, both the County appointed hearing officer, and an attorney from the Suffolk County Attorney's Office, wilfully, deliberately and/or negligently failed to comport with the dictates of <u>Krimstock</u>, and deliberately and knowingly violated the plaintiff's right to Due Process, as guaranteed by the 14th Amendment.

29.    As a result of the forgoing, the plaintiff has commenced this action for violation of his rights to both procedural and substantive Due Process, and to recover damages for the loss of use of his vehicle.

30.    The plaintiff further seeks injunctive relief to enjoin the defendant from continuing its systematic refusal to comport with the requirements of Krimstock.

31.    Under New York substantive law, the plaintiff is entitled to damages equal to the fair market rental value of his vehicle for the entire period during which the defendant deprived him of its use without having had afforded him Due Process <u>Kuwait Airways Corporation v. Ogden Allied Aviation Services.</u> 726 F.Supp. 1389 (E.D.N.Y.1989), <u>MCI Worldcom Network Services v. Pecrete Construction Inc.</u>, 2006 WL 559664 (S.D.N.Y. 2006), <u>Mountain View Coach Lines Inc. v. Storms.</u> 102 A.D.2d 663, 476 NYS2d 918 (2nd Dept. 1984), <u>Sellari v. Palermo</u>, 188 Misc. 1057, 70 NYS2d 554 (1947) <u>Naughton Mulgrew Motor Car Co. v. Westchester Car Co.</u> 105 Misc. 595, 173 NYS 437 (1919).

32.     The plaintiff further seeks declaratory relief, adjudging that the Suffolk County

Code is unconstitutional *as it is being applied* by the defendant County, and injunctive relief to

enjoin the County from continuing same, and its ongoing practice, policy and procedure of

depriving vehicle-owners of the use of their vehicles while contemporaneously failing and/or

refusing to afford them Due Process, or a hearing before a neutral hearing officer.

**V       Suffolk County Has Systematically Maintained
Practices Which Violate The Constraints of
<u>The Due Process Clause of the 14th Amendment</u>**

A       The County and its representatives were well aware of the
<u>U.S. Constitutional constraints addressed in Krimstock</u>

33.     As a result of the defendant's systematic and continuous violation of the

constraints of both the 14th Amendment, and the Suffolk County Code, in 2004, an action was

commenced against the then County Attorney Christine Malafi individually, and Suffolk County

(et al.) in the United States District Court for the Eastern District of New York, pursuant to 42

U.S.C. § 1983, under case number CV-04-3651, <u>Sullivan v County of Suffolk, et al</u>.

34.     In <u>Sullivan</u>, the plaintiff explicitly argued that the County's hearing officers were

failing to require the County to establish that: (a) the County was likely to succeed on the merits

of a forfeiture action and (b) that retention of the vehicle was necessary to prevent its destruction,

sale or removal from the jurisdiction.

35.     Upon information and belief, in <u>Sullivan</u>, the jury found that the County violated

plaintiff's rights by failing to meet the standards set by the 14th Amendment and the Suffolk

County Code.

36.     Upon information and belief, however, the jury only awarded one dollar in damages because the County had offered to give the plaintiff his car back prior to the commencement of the lawsuit.

37.     Despite the fact that the <u>Sullivan</u> case laid bare the dictates of <u>Krimstock</u> to the County, back in 2006, the County and its agents have simply and deliberately continued to defy and ignore them.

38.     As trained and/or permitted by the defendant, the County's Assistant County Attorneys continue to argue that the holding of <u>Krimstock</u> is "*dicta*" which does not apply to the County's retention hearings.

39.     As trained and/or permitted by the County, the "hearing officers" appointed by the County Executive do not require the County to address, much less establish: (a) that the County is likely to succeed on the merits of a forfeiture action, (b) that retention of the vehicle is necessary to prevent its destruction, sale or removal from the jurisdiction or (c) that nothing short of retention would suffice to preserve the County's interests while a forfeiture action is pending.

> B.     Despite being affirmatively aware of the U.S. Constitutional constraints laid out in <u>Krimstock</u>, the County has <u>systematically refused and/or failed to comply with them</u>

40.     Upon information and belief, at the county's retention hearings, both the hearing officers and Assistant County Attorneys have maintained the position that the County bears no burden to establish other than "probable cause" for the underlying DWI arrests, and that once such burden is met, the County is permitted to retain possession of seized vehicles.

41.     As reflected within the County's own records, including transcripts of the

retention hearings provided by the County, in case, after case, after case, this "standard" has been

applied by the County

42.     This is reflected within actual hearing transcripts, in the County's possession,

which include, but are not limited to, the following:

43.     *Transcript of* Christine Malafi v. Mark C. Summer, April 29, 2010:

> "After a hearing and based on the credible evidence adduced at the hearing,
> I find firstly there was, in fact, probable cause for the stop and arrest that
> has been shown by the evidence before the Court.
> Second Part of my determination is that Suffolk County is directed to
> retain the vehicle pending the resolution of a forfeiture proceeding"

44.     *Transcript of* Christine Malafi v. Mark Bischoff, September 28, 2010:

> "After a hearing I find that there was, in fact, probable cause for the stop and
> arrest. The second part of my determination is based upon the credible evidence
> before me. Suffolk County is directed to retain the vehicle pending the resolution
> of a forfeiture proceeding"

45.     *Transcript of* Christine Malafi v. Gus Binos, June 1, 2009:

> "After a hearing and based on the credible evidence adduced at the hearing,
> I find that, firstly, there was, in fact, probable cause for the stop and arrest in this
> case. The second part of my determination is that Suffolk County is directed to
> retain the vehicle pending resolution of a forfeiture proceeding"

46.     *Transcript of* Christine Malafi v. Tomika Berry, December 12, 2009:

> "After a hearing and based on the credible evidence adduced at the hearing,
> I find firstly that there was, in fact, probable cause for the stop and arrest in this
> case. The second part of my determination is based on the credible evidence
> adduced at the hearing, once again, that Suffolk County is directed to
> retain the vehicle pending the resolution of a forfeiture proceeding"

47.    *Transcript of* Christine Malafi v. Collee White, May 19, 2009:

"Probable cause for the stop and arrest has been shown by the evidence in this case. After a hearing and in this particular case, I am going to retain the vehicle pending resolution of a forfeiture proceeding"

48.    Recently, the defendant County of Suffolk provided a litigant in the E.D.N.Y. with a total of thirty-three (33) transcripts from its retention hearings, and represented that these thirty-three (33) transcripts represented all of the transcripts from retention hearings which the County Attorney's Office could locate and/or had in its possession.

49.    Those transcripts are the actual transcribed records of thirty-three (33) retention hearings which: (a) were conducted between the period of January 27, 2004 through June 13, 2011, (b) were presided over by six (6) different hearing officers, and (c) had the County represented by seven (7) different Assistant County Attorneys.

50.    As reflected within the transcripts, at not a single one of those thirty-three (33) hearings did the respective hearing officer require the County to establish: (a) that the County was likely to succeed on the merits of a forfeiture action, (b) that retention of the vehicle was necessary to prevent its destruction, sale or removal from the jurisdiction and (c) that nothing short of retention would have sufficed to preserve the County's interests while a forfeiture action was pending.

51.    With regard to such thirty-three (33) transcripts, the dates of the hearings, the respective hearing officer who presided over each hearing, the Assistant County Attorney who represented the County at each hearing, and the respective vehicle owners, included the following:

11

| Date | Defendant | Assistant County Attorney | Hearing Officer |
|---|---|---|---|
| 6/13/11 | Christopher W. Mackey | Jacqueline Caputi | J. Dounias |
| 10/7/10 | Jesse Freda | Richard Weinschenk | John DiNoto |
| 9/28/10 | Mark Bischoff | Richard Weinschenk | John DiNoto |
| 8/5/10 | Stephen Boyle Jr | Kelly Green | John DiNoto |
| 7/22/10 | Erika Diane Pierson | Kelly Green | John DiNoto |
| 6/15/10 | MCN Distributors Inc. | Kelly Green | G. Tschembia |
| 4/29/10 | Mark C. Summer | Richard Weinschenk | John DiNoto |
| 3/23/10 | Eric J. Wright | Kelly Green | Dounias |
| 3/1/10 | Nelson Hernandez | Richard Weinschenk | Sidell |
| 1/19/10 | Roy Charles Randall | Kelly Green | John DiNoto |
| 12/12/09 | Tomika Berry | Kelly Green | John DiNoto |
| 12/7/09 | Gloria Pelosi | Richard Weinschenk | J. Sidell |
| 11/16/09 | Susan C. Komperda | Richard Weinschenk | G. Tschembia |
| 11/2/09 | Leonora E. Buono | Richard Weinschenk | G. Tschembia |
| 10/20/09 | Alpine Chimney Sweeps Inc | Richard Weinschenk | John DiNoto |
| 10/19/09 | Deborah T. Niemezyk | Richard Weinschenk | Dounias |
| 10/6/09 | Julius C. Bailey | Kelly Green | Armand Araujo |
| 9/22/09 | Michael J. Gazzani | Kelly Green | G. Tschembia |
| 9/15/09 | John J. Demsheck | Kelly Green | J. Dounias |
| 8/3/09 | Jon N. Montalbano | Richard Weinschenk | G. Tschembia |
| 6/9/09 | James B. Ferrari | Kelly Green | John DiNoto |
| 5/19/09 | Collee White | Kelly Green | John DiNoto |
| 4/14/09 | Gus Binos | Kelly Green | John DiNoto |
| 7/17/08 | Richard W. Saetta | Adrianna Lopez | John DiNoto |
| 1/15/08 | Scott D. Rella | Adrianna Lopez | John DiNoto |
| 12/17/07 | Maryanne Ruane | Adrianna Lopez | John DiNoto |
| 10/16/07 | Edward Hunter III | Adrianna Lopez | H. Sidell |
| 8/14/07 | Patricia M. Moos | Christopher Gatto | Armand Araujo |
| 8/6/07 | Leo G. Claus | Rachael Anello | John DiNoto |
| 6/12/07 | Kathleen L. Geiger | Adrianna Lopez | Armand Araujo |
| 4/23/07 | Jeffrey C. Nelson | Adrianna Lopez | Peter J. Dounias |
| 3/20/07 | Richard J. Eng | Christopher Gatto | Armand Araujo |
| 1/27/04 | Stephen Sullivan | Lori Pack | John Hanley |

52.     As reflected within these transcripts of the retention hearings provided by the

defendant County, the defendant has systematically failed and refused to comport with the

Due Process requirements enunciated in Krimstock, despite being fully aware of same.

C.   In further Violation of the Dictates of <u>Krimstock</u>,
     The County Has **Never** Afforded Seized Vehicle Owners
     <u>Retention Hearings Before **Neutral** Hearing Officers</u>

53.     In an even more egregious systematic violation of vehicle owner's rights, the

hearing officers who preside over the County's retention hearing have been trained and/or

permitted to act, not as *neutral* hearing officers, but as affirmative advocates for the County.

54.     This has included hearing officers explicitly ordering vehicle owners to sign

General Releases, releasing the County from any and all liabilities, as a condition precedent to

the release of <u>any</u> owner's respective vehicle.

55.     As has been attested to under oath by one of the Assistant County Attorneys who

represented the County at such retention hearings, Kelly Green, the County has maintained the

position that, irrespective of the outcome of its retention hearings, the County retains

seized vehicles *indefinitely*, releasing them only if each respective owner first signs a General

Release, releasing the County from any and all liabilities, whatsoever.

56.     In accord with this position, anytime the County's supposedly "neutral" hearing

officers directed the release of a seized vehicle at the conclusion of a retention hearing,

they explicitly ordered that, *as a condition precedent to a vehicle's release*, each respective

owner was required to *first* sign a General Release, releasing the County from any and all

liabilities, whatsoever.

57.     The County is acutely aware that by causing and/or permitting their hearing officers to "order" same, such hearing officers were not acting as "neutral" judicial administrative officers, as was addressed by a New York District Court Judge who was constrained to consider the hearing officers' practices in this regard in Bailey v. Suffolk County Police Department, 28 Misc 3d 1216(A), 2010 WL 3020763, 2010 N.Y. Slip Op. 51369(U).

58.     Notwithstanding such obvious fact, the County prepared a standard form-order for its hearing officers to execute at the conclusion of each respective retention hearing, which contained a box for the hearing officers to "check-off" and which provided that:

> "SUFFOLK COUNTY IS DIRECTED TO RETURN THE VEHICLE BEARING THE ABOVE NOTED VEHICLE IDENTIFICATION NUMBER TO THE OWNER OF THE VEHICLE, **UPON RECEIPT BY THE COUNTY OF A SIGNED AND NOTARIZED GENERAL RELEASE . . .**"

59.     Consistent with the language of this form, each time one of the County's hearing officers directed that a seized vehicle be released, they ordered the respective owner to sign a General Release in favor of the County, as a condition precedent to the release of their vehicle, as reflected within the transcript of the matter of Christine Malafi v. Julius Bailey, October 6, 2009, which contains the following:

| | |
|---|---|
| "THE COURT: | This proceeding is dismissed. The car is returned. |
| THE RESPONDENT: | Thank you. |
| THE COURT: | But you have to pay storage charges. You have to pay the towing and storage charges to get the car back |
| MS GREEN: | You have to sign a release for the truck. |
| THE COURT: | Yes, and you have to sign a release to get the car back. |
| THE RESPONDENT: | A release? |

14

THE COURT:          Yes

THE RESPONDENT:     Okay.


60.     As Kelly Green, the Assistant County Attorney who represented the County at the

Bailey hearing has testified under oath, the hearing officer ordered that, as a condition precedent

to the release of their vehicle, the owner had to execute a General Release in favor of the County.

61.     Within the matter of James Ferrari v The County of Suffolk, which currently

remains pending in the U.S. District Court, E.D.N.Y., Ms. Green testified as follows:

> Q.     Was [Mr. Bailey] required to sign a general release in favor of the County
>        to get his car back?
>
> A.     Yes.
>
> Q.     Was that in every case when a car was released?
>
> A.     Yeah.
>
> Q.     Without the signing of a general release they couldn't get the car back?
>
> A.     No, that's not true.
>
> Q.     Why would they sign a general release then?
>
> A.     There's different releases. It wasn't always the same general release. It
>        depended upon the agreements between the parties.
>
> Q.     When you went to the hearings, you had a general release form, correct?
>
> A.     Yes.
>
> Q.     The standard form was a general release running in favor of the County,
>        correct?
>
> A.     Yes.
>
> Q.     It was a release under which the owner of the vehicle would release the

15

County of all claims, correct?

A.    Yes.

Q.    With regard to you saying, as reflected on page 13 of the [Bailey] transcript, you were not directing the owner of that vehicle to sign that general release, were you?

A.    No, I was reminding the judge of the – there was loose ends.

Q.    You were reminding the judge that in order for the County to release the vehicle, the owner had to sign a general release?

A.    Yes.

62.    After Ms. Green testified that she handled as many as sixty (60) retention hearings each week as an Assistant County Attorney representing the County, she further testified as follows:

Q.    To the extent that vehicles were not retained after retention hearings, was it your practice to require that, prior to the release of a motor vehicle, the vehicle owner had to sign a general release releasing the County of all liability?

A.    My practice?

Q.    Yes

A.    Nothing was ever my practice.

Q.    Whose practice was it?

A.    The County's

Q.    In a case where the judge directed a vehicle to be returned, the County would not release it unless and until the owner signed a general release, correct?

A.    Yes.

Q.    How did you become aware of that practice?

A.     Through my training and also documentation we had to go through.  That was part of it.

63.     Irrespective of whatever was established, or not established, at a retention hearing, the County would not release any seized vehicle unless its owner signed a general release.

64.     This blatant and obvious Due Process violation was exacerbated by the fact that it was being systematically carried out by the County's supposedly "neutral" hearing officers, who routinely ordered vehicle owners to execute general releases *as a condition precedent to the County's obligation to release their vehicles*, as reflected within retention hearing transcripts within the County's possession, which include the following:

65.     *Transcript of* Christine Malafi v. Kathleen Geiger, June 12, 2007:

> "Accordingly, the Court directs that the County return the vehicle, a 1990 Acura, New York Registration DET9375 upon execution by the owner of a general release and payment of all towing and storage charges and execution of a stipulation that the vehicle and any other vehicle owned by Ms. Geiger will not be operated by Daniel Gerbino in the future"

66.     *Transcript of* Christine Malafi v. Richard Eng, March 20, 2007:

> "THE HEARING OFFICER: I'm going to direct the County to return the vehicle to Mr. Eng on the following conditions:
> 1. That he execute a stipulation that the vehicle will not be operated by him unless he has a valid driver's license, the operation of the vehicle shall be limited to business only.  Do you understand those conditions?
>
> MR. LIBRETT:          We do, Your Honor.
>
> THE HEARING OFFICER:  Do you agree with them, Mr. Eng?
>
> MR. LIBRETT:          Yes we do, Your Honor.

17

THE HEARING OFFICER: All right. Order signed and, of course, **the usual general release,** storage and towing charges.

67.     As reflected within the transcripts listed within paragraphs 61 and 62 herein above, the supposedly "neutral" hearing officers appointed by the County Executive additionally acted as advocates for the County by issuing "orders" and imposing "conditions" upon the owners of vehicles which were possessed of the immediate right to possess their vehicles free of any such conditions.

68.     By way of example, such orders and conditions included, but were not limited to: (a) ordering that an owner's vehicle would be only released upon condition that the owner never permit a specified individual from ever driving the vehicle, under penalty of waiving any right to a future retention hearing if the vehicle was ever again seized by the County, or (b) ordering that the County retain possession of a seized vehicle unless and until an owner obtained and produced a valid New York State driver's license, among others.

## VI     Governmental Policies - Monell Liability

69.     At all times relevant hereto, it was the policy of Suffolk County, and its hearing officers that in any post-deprivation hearing held pursuant to the Suffolk County Code, in order to make a prima facie showing of entitlement to retention of a vehicle prior to and during the pendency of a civil forfeiture action, the County was not, and is not, required to demonstrate: (a) that the County is likely to succeed on the merits of a forfeiture action and (b) that no means short of retention can protect the County's interests in the respective vehicle against destruction or sale during the pendency of a forfeiture proceeding.

18

70.     At all times relevant hereto, it was the custom, policy and practice of Suffolk County, and its hearing officers, to require the County to show nothing more than probable cause for a stop and DWI arrest, upon the showing of which the County was entitled to retain, and did retain, possession of seized vehicles and concomitantly deprived their owners of the use and possession of same.

71.     At all times relevant hereto, it was the custom and policy of Suffolk County, and its hearing officers, that in any post-deprivation hearing held pursuant to the Suffolk County Code, to require a vehicle owner to prove hardship or necessity or the County would retain the vehicle, thus shifting the burden of proof to vehicle owners.

72.     At all times relevant hereto it was the custom and practice of Suffolk County and its hearing officers to retain vehicles, and thereby deprive the owners of such vehicles the use and possession of their vehicles, upon their failure to establish such a hardship.

73.     At all times relevant hereto, it was the policy of the defendant to train its County Attorneys and Judicial Hearing Officers to refuse to require the County to establish: (a) that the County is likely to succeed on the merits of a forfeiture action, (b) that retention of the vehicle is necessary to prevent its destruction, sale or removal from the jurisdiction or (c) that nothing short of retention would suffice to preserve the County's interests while a forfeiture action is pending and allowed for retention of the vehicle after only a mere showing of the validity of the underlying arrest.

74.     Pleading in the alternative, at all times relevant hereto, Suffolk County
failed to train the Judicial Hearing Officers, who had been appointed by the County Executive, to
require the County to establish: (a) that the County is likely to succeed on the merits of a
forfeiture action, (b) that retention of the vehicle is necessary to prevent its destruction, sale or
removal from the jurisdiction or (c) that nothing short of retention would suffice to preserve the
County's interests while a forfeiture action is pending, and a condition precedent to order the
County to retain continued possession of owners' vehicles.

75.     Contemporaneously, Suffolk County has failed to train the attorneys within the
Office of the County Attorney, as to the requirements of <u>Krimstock</u>, and its applicability in
County retention hearings.

76.     Such failures to train, caused the vehicle owners, inclusive of the plaintiff, to be
deprived of the use and possession of their vehicles, without Due Process of law, in violation of
their U.S. Constitutional rights.

77.     At all times relevant hereto, it was the policy of the defendant to train its
County Attorneys and Judicial Hearing Officers to abstain from requiring the County Attorney to
prove all of the elements of § 270-26(B)(1), namely to prove that retention of the vehicle is
necessary to prevent its removal or destruction absent less restrictive means and allowed for
retention of the vehicle after only a mere showing of the validity of the underlying arrest.

78.     Pleading in the alternative, at all times relevant hereto, Suffolk County
failed to train the Judicial Hearing Officers, who had been appointed by the County Executive, to
require the County to establish that retention of the vehicle is necessary to prevent its removal or
destruction absent less restrictive means and allowed for retention of the vehicle after only a
mere showing of the validity of the underlying arrest.

79.     Such failure to train, caused the vehicle owners, inclusive of the plaintiff, to be
deprived of the use and possession of their vehicles, without Due Process of law, in violation of
their U.S. Constitutional rights.

80.     In further violation of the Due Process rights of vehicle owners, inclusive of the
plaintiff, the County adopted the position, and caused and/or permitted its hearing officers to
maintain the position that it could continue to maintain continuous possession of all seized
vehicles *indefinitely*, and concomitantly deprive owners of their rights to use and possess their
vehicles, unless and until each such owner executed a General Release, releasing Suffolk County
of any and all liabilities, whatsoever.

81.     The policies, practices and customs set forth herein above were widespread,
uniform, and were maintained by all of the hearing officers who presided over retention hearings,
and by all Assistant County Attorneys who represented the County at such hearings, and as such,
were customs, policies and practices of which the County's supervising policy-makers must have
been aware.

82.     Because the actions described herein, and the resultant injuries sustained by
the plaintiff were undertaken pursuant to policies, customs and practices maintained by the
County of Suffolk, the County is a "person" liable to the plaintiff under 42 U.S.C. §1983.

## CLAIM FOR RELIEF

### COUNT ONE

### DUE PROCESS CLAIMS UNDER THE
### FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Procedural Due Process - 42 U.S.C. §1983)

83.     The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "82" herein above, with the same force and effect as if fully set forth at length herein.

84.     At all times described herein, the plaintiff possessed the clearly established property rights, under New York State Law, to purchase, own and enjoy his motor vehicle without unlawful deprivation of his use or enjoyment, without unlawful and arbitrary interference and deprivation from the defendant.

85.     As described herein above, the defendant herein deprived the plaintiff his property rights in the use and possession of his motor vehicle without Due Process of law.

86.     The defendant County effectuated such deprivation by creating and applying a policy, practice and procedure pursuant to which the defendant was permitted to retain continuous possession of the plaintiff's motor vehicle, and deprived him of the use and possession of same, without having established before any neutral hearing officer, that: (a) the County was likely to succeed on the merits of a forfeiture action, (b) that no means short of retention can protect the County's interests in the respective vehicle against destruction or sale during the pendency of a forfeiture proceeding, or (c) that continued retention was necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding.

22

87.     The defendant applied such Constitutionally infirm practice, notwithstanding the dictates of the Due Process clause, the Second Circuit's holding in <u>Krimstock</u>, Suffolk County Code §270-26 and the Eastern District's decision in <u>Sullivan</u> against the very same defendant.

88.     In effectuating the deprivation of the plaintiff's right to use and possess his motor vehicle, the defendant violated the plaintiff's right to procedural due process as guaranteed under the Fourteenth Amendment of the United States Constitution; as such, the defendant is liable to the plaintiff pursuant to 42 U.S.C. § 1983.

89.     As a result of the aforesaid defendant's violation of plaintiff's procedural due process rights, the plaintiff has been damaged by being unable to use and enjoy his property and by being unlawfully deprived of his vehicle, and he is therefore entitled to obtain damages equal to the fair market rental value of his vehicle for the entire period of such deprivation.

90.     All of the injuries described herein above were actually and proximately caused by the acts of the defendant, and its agents, as described herein.

## COUNT TWO

## DUE PROCESS CLAIMS UNDER THE FIFTH AND
## FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Substantive Due Process - 42 U.S.C. §1983)

91.     The plaintiff repeats and reiterates the allegations set forth within paragraphs "1"

through "90" herein above, with the same force and effect as if fully set forth at length herein.

92.     At all times described herein, the plaintiff was vested of constitutionally protected

property rights in the use and possession of his motor vehicle.

93.     As detailed herein above, the defendant arbitrarily, capriciously and deliberately

deprived the plaintiff of such property rights, and engaged in a pattern of conduct which was

oppressive in an constitutional sense, in violation of the plaintiff's rights to substantive due

process, as guaranteed to the plaintiff under the Fourteenth Amendment of the United States

Constitution.

94.     More specifically, the County obtained an "order" purportedly authorizing the

County to retain continuing possession of the plaintiff's motor vehicle, because the hearing

officer appointed by the County Executive failed to apply settled law, that being the dictates of

Due Process articulated in Krimstock and brought to the County's attention in Sullivan, and

instead, relied upon the County's policy that vehicles are to be retained upon a mere showing

of probable cause for a stop and DWI arrest.

95.     In light of: (a) the holding in <u>Sullivan</u> against this very same defendant, (b) the fact that the defendant thereafter continued to maintain a policy, practice and procedure under which it continued to withhold vehicles from their owners while depriving such owners Due Process, and (c) doing so in clear defiance or willful ignorance of the constitutional constraints articulated in <u>Krimstock</u> as well as the constraints of its own County Code, the defendant's actions should serve to shock the judicial conscience.

96.     All of the injuries described herein above were actually and proximately caused by the acts of the defendant described herein.

97.     The aforesaid defendant's violation of plaintiff's due process rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

98.     Having deliberately violated the plaintiff's Constitutionally protected rights, and concomitantly having caused the plaintiff to sustain monetary damages as a result thereof, the defendant is liable to the plaintiff, and the plaintiff is entitled to secure relief against the defendant, pursuant to 42 U.S.C. §1983.

## COUNT THREE

## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

99.     The plaintiff repeats and reiterates the allegations set forth within paragraphs "1"

through "98" herein above, with the same force and effect as if fully set forth at length herein.

100.     The defendant has continued, and continues to maintain the constitutionally infirm

policies, practices and procedures set forth herein above, despite numerous Court determinations

that such policies, practices and procedures were in violation of the constraints of the Due

Process Clause of the 14th Amendment as articulated within Krimstock.

101.     The County's: (a) ongoing refusal and failure to comply with the dictates of

Krimstock, (b) failure to secure, appoint or properly train persons to preside as "neutral" hearing

officers over retention hearings, and (c) continuing policy of refusal to release any vehicles

seized by the County, (including within cases where the owner is entitled to its return as a matter

of right), unless and until the owners of such seized vehicles first sign a General Release,

presents an ongoing controversy which affects not merely the current plaintiff, but has affected

third parties in the past, and will undoubtedly affect third parties in the future.

102.     As such there is an actual controversy over which this Court possesses

jurisdiction.

103.     In view of the forgoing, the plaintiff seeks a declaratory judgment, adjudging that

such practices on the part of the County are unconstitutional, and that Suffolk County Code

chapter §270 et seq and/or its amended or replacement provisions are unconstitutional as they are

being applied by the County, as well as permanent injunctive relief affirmatively prohibiting the

County from continuing to carry out the constitutionally infirm practices described herein.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff requests that the Court render judgment:

### COUNT ONE

#### Procedural Due Process Claim

(a)     Awarding the plaintiff compensatory damages against the defendant, for the loss of use of his vehicle, and for the cost to repair the damages sustained by the vehicle while it was in the exclusive possession of the defendant, in such amounts as the plaintiff establishes at the time of trial; and

(b)     For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b); and

(c)     For any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(d)     For such other and further relief as this court may deem just and proper.

### COUNT TWO

#### Substantive Due Process Claim

(a)     Awarding the plaintiff compensatory damages against the defendant, for the loss of use of his vehicle, and for the cost to repair the damages sustained by the vehicle while it was in the exclusive possession of the County, in such amounts as the plaintiff establishes at the time of trial; and

(b)     For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b); and

(c)     For any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(d)     For such other and further relief as this court may deem just and proper.


## COUNT THREE

### Declaratory Judgment and Injunctive Relief

(a)     Adjudging and declaring that the County's practices described herein above are

        violative of the Due Process Clause of the 14th Amendment; and

(b)     Enjoining the County from continuing to maintain such constitutionally infirm

        practices, and

(c)     For reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b); and

(d)     For any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C.

        §1988(c); and

(e)     For such other and further relief as this court may deem just and proper.


Dated: Merrick, New York
       December 27, 2012

                          Yours etc.,

                          Campanelli & Associates, P.C.


                          By: _____
                                Andrew J. Campanelli (AC4014)
                                Attorneys for Plaintiff
                                1757 Merrick Avenue, Suite 204
                                Merrick, New York 11566
                                (516) 746-1600

## VERIFICATION

STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF NASSAU    )

        JAMIE REYES, being duly sworn, deposes and says:

        That I am the Plaintiff in the within action and I have read the foregoing

Complaint and know the contents thereof; the same are true to my own knowledge, except as to

those matters said to be upon information and belief, and as to those matters, I believe them to be

true.

                                                JAMIE REYES

Sworn to before me on this
____ day of December 2012

_____
Notary Public

ANDREW J. CAMPANELLI
Attorney At Law
NOTARY PUBLIC, State of New York
No. 30-5006814
Qualified in Nassau County
Commission Expires March 1, 20___