**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
JAIME REYES,

                    Plaintiff,               **MEMORANDUM OF**
        v.                         **DECISION AND ORDER**
                                      13-CV-441 (ADS) (GRB)
THE COUNTY OF SUFFOLK,

                    Defendant.
----------------------------------------------------------X
**APPEARANCES:**

**Campanelli & Associates, PC**
*Attorneys for the Plaintiff*
1757 Merrick Avenue, Suite 204
Merrick, NY 11566
    By:  Andrew J. Campanelli, Esq., of Counsel

**Suffolk County Attorney's Office**
*Attorneys for the Defendants*
H. Lee Dennison Building, 5th Floor
100 Veterans Memorial Highway
Hauppauge, NY 11788
    By:  Christopher M. Gatto, Assistant County Attorney

**SPATT, District Judge.**

On January 25, 2013, the Plaintiff Jaime Reyes (the "Plaintiff") commenced this action pursuant to 42 U.S.C. §§ 1983 and 1988 against the Defendant County of Suffolk (the "County" or the "Defendant").  The Defendant is a municipal corporation organized and operating under the law of the State of New York.  The Plaintiff alleges that the Defendant violated his rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution in connection with its retention of his motor vehicle.

In this regard, the Plaintiff asserts the following three causes of action: (1) pursuant to 42 U.S.C. § 1983, a claim that the Defendant denied him of procedural due process in violation of his rights under the Fourteenth Amendment of the United States

Constitution; (2) pursuant to 42 U.S.C. § 1983, a claim that the Defendant deprived him

of substantive due process in violation of his rights under the Fourteenth Amendment of

the United States Constitution; and (3) a claim for a declaratory judgment finding that the

Defendant's practices with respect to retaining vehicles is unconstitutional and for

permanent injunctive relief enjoining the Defendant from continuing the allegedly

unconstitutional practices.

 Presently before the Court is a Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

12(b)(6) motion by the Defendants to dismiss the Plaintiff's Complaint in its entirety.

The Court pauses here to note that the Plaintiff's opposition to the Defendant's motion

uses footnotes in its memorandum of law, which is contrary to this Court's Individual

Rule II.A. Notwithstanding this infraction, the Court will consider the Plaintiff's papers

in rendering its decision.  However, the Court advises the Plaintiff's counsel that any

future filings that contain footnotes will not be considered by this Court.

 For the reasons that follow, the Court grants in part and denies in part the

Defendant's motion.

## I. BACKGROUND

### A.  Rule 12(b) Standard for Considering Factual Allegations and Evidence Outside the Complaint

 Before reciting the underlying factual allegations of this case, the Court observes,

as an initial matter, that evidence outside of the Complaint may not be considered by the

Court when deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6).

See, e.g., DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir.2010) ("In ruling

on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess

the legal feasibility of the complaint, not to assay the weight of the evidence which might

be offered in support thereof.") (citation and internal question marks omitted); Hahn v. Rocky Mt. Express Corp., No. 11 Civ. 8512(LTS) (GWG), 2012 WL 2930220, at *2 (S.D.N.Y. June 16, 2012) ("When deciding a motion to dismiss . . . [e]vidence outside [the complaint] . . . cannot [ ] be considered on review of a 12(b)(6) motion.") (citation and internal quotation marks and alterations omitted).

In this regard, pursuant to Fed. R. Civ. P. 12(d), where matters outside the complaint are presented in connection with a Rule 12(b)(6) motion, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (quoting Fonte v. Bd. of Managers of Continental Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988)).

In this case, the Defendant includes with its Rule 12(b)(6) motion to dismiss several exhibits that are outside of the Complaint.  These exhibits are as follows: (1) a transcript of the September 20, 2012 post-seizure retention hearing, the constitutionality of which the Plaintiff challenges; (2) the "Simplified Information" or complaint against the Plaintiff's uncle, Mario Ramirez ("Ramirez"), as well as supporting depositions, charging Ramirez with driving the Plaintiff's vehicle without a license in violation of New York Vehicle and Traffic Law (the "VTL") § 509-1 and driving an unregistered vehicle in violation of VTL § 401-1A; (3) the driving record of Ramirez from the New York Department of Motor Vehicles (the "DMV"); (4) the DMV title and registration record for the Plaintiff's vehicle at issue in this case; (5) the "Notice of Seizure and Hearing" informing the Plaintiff that his vehicle had been seized and impounded by the

police pursuant to the unlicensed operator seizure law, Suffolk County Code Law

("SCCL") § 818-13, and advising him that a hearing concerning the retention of his

vehicle was scheduled for September 6, 2012; (6) the September 20, 2012 determination

of the purportedly "neutral magistrate" ordering that the Plaintiff's vehicle remain in the

Defendant's custody; (7) a copy of SCCL § 818-13; and (8) the summons and complaint,

dated February 13, 2013, for a civil forfeiture action entitled Paul J. Margiotta, Acting

County Attorney for the County of Suffolk vs. a 2005 Dodge, Vin No.

1D8HB58D25F50890, Jamie Reyes that was filed in the Supreme Court of the State of

New York, County of Suffolk.

Generally, when a defendant attempts to counter a plaintiff's Complaint with its

own factual allegations and exhibits, such allegations and exhibits are inappropriate for

consideration by the Court at the motion to dismiss stage.  See, e.g., Dual Groupe, LLC v.

Gans-Mex LLC, 932 F. Supp. 2d 569, 572 (S.D.N.Y. 2013) ("Defendants dispute many

of the complaint's factual allegations, which the court cannot adjudicate at the motion to

dismiss stage.").  Nevertheless, in its analysis, the Court may refer "to documents

attached to the complaint as an exhibit or incorporated in it by reference, to matters of

which judicial notice may be taken, or to documents either in [the] [P]laintiff['s

possession or of which [the] [P]laintiff[ ] had knowledge and relied on in bringing suit."

Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Karmilowicz v.

Hartford Fin. Servs. Group, 494 F. App'x 153, 155–57 (2d Cir. 2012) ("[A] plaintiff

cannot evade a properly argued motion to dismiss simply because [the] plaintiff has

chosen not to attach [a document on which he relies in bringing suit] to the complaint or

to incorporate it by reference.") (citations and internal quotation marks omitted); Cortec

Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.").

In this regard, the Court finds that it may consider all of the Defendant's exhibits "without converting the motion[ ] to dismiss into [a] motion[ ] for summary judgment[.]" Dellate v. Great Neck Union Free Sch. Dist., CV 09-2567 AKT, 2010 WL 3924863, at *5 (E.D.N.Y. Sept. 30, 2010), aff'd sub nom. Dellatte v. Great Neck Union Free Sch. Dist., 448 F. App'x 164 (2d Cir. 2012). This is "because 'the record was available to and clearly known of' by all parties to this action." Dellate, 2010 WL 3924863, at *5 (quoting Bennett v. Tucker, No. 95 Civ. 8029 (SAS), 1996 WL 288202, at *1 n.3 (S.D.N.Y. May 30, 1996)); see also Tiraco v. New York State Bd. of Elections, 12-CV-2273 KAM MDG, 2013 WL 4046257 (E.D.N.Y. Aug. 7, 2013) ("[A] court may also consider 'public documents of which the plaintiff has notice.'") (quoting Brodeur v. City of New York, No. 04-CV-1859 (JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005)); Johnson v. County of Nassau, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) ("[T]he Court 'may take judicial notice of the records of state administrative procedures as these are public records, without converting a motion to dismiss to one for summary judgment.'") (quoting Evans v. New York Botanical Garden, No. 02 Civ.3591 RWS, 2002 WL 31002814, at *4 (S.D.N.Y. Sept.4, 2002)).

Thus, the Court draws the following facts from the Plaintiff's Complaint and the

Defendant's exhibits and construes them in a light most favorable to the Plaintiff.

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).

**B.  Underlying Factual Allegations**

The Plaintiff resides in Hampton Bays, located within the County.  (Compl., ¶ 6.)

At all times relevant, he owned a Dodge Durango automobile bearing Vehicle

Identification Number 1D8HB58D25F508980 (the "Plaintiff's vehicle").  (Compl., ¶ 8.)

While the Plaintiff asserts that his vehicle is a 1995 model, the DMV record indicates it is

actually a 2005 model.  (Compl., ¶ 8; Def. Mot., Exh. D.)

On August 23, 2012, the Defendant seized the Plaintiff's vehicle.  (Compl., ¶ 9.)

According to the Complaint, the Plaintiff's vehicle was seized pursuant to a DWI seizure

program within which the Defendant seized and retained possession of motor vehicles

incident to DWI arrests and subjected these vehicles to civil forfeitures as "the

instrumentalities of a crime."  (Comp., ¶ 9.)  However, the Defendant's exhibits reveal

that the Defendant did not seize the Plaintiff's vehicle pursuant to a DWI seizure program,

but rather, seized the Plaintiff's vehicle in connection with the arrest of the Plaintiff's

uncle, Ramirez, who, at the time of the seizure, was allegedly operating the Plaintiff's

vehicle without a license and without the consent of the Plaintiff.  (Compl., ¶ 10; Def.

Mot., Exhs. B, E, G, H.)

On or about August 27, 2012, the Defendant sent the Plaintiff a "Notice of

Seizure and Hearing" (the "Notice"), advising the Plaintiff that his vehicle had been

seized and impounded by the police pursuant to the unlicensed operator seizure law.

(Def. Mot., Exh. E.)  The Notice explained:

[SCCL § 818-13] provides that a police officer must seize any vehicle where the operator is arrested or issued a summons or appearance ticket for either violation below committed in the officer's presence:

(1) A violation of aggravated unlicensed operation in the third degree pursuant to § 511(1) of the [VTL], based on an existing suspension or revocation for § 510(2)(a)(i), (ii), (iii), (iv) or (vi), 510(2)(b)(i) or (xii), or 510(3)(e) under the [VTL]; or (2) a violation of § 509(1) when the operator has a prior conviction for §509(1) under the [VTL].

(Def. Mot., Exh. E.)

Further, the Notice informed the Plaintiff that

[p]ursuant to [SCCL] § 818-13, there will be a hearing promptly scheduled before a neutral Magistrate to determine whether probable cause existed for the operator's having been issued a summons or having been arrested, whether the County is likely to succeed on the merits of the forfeiture action, whether retention is necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding, and whether any other measures would better protect the County's interest during the proceedings, including, but not limited to: (a) Issuance of a restraining order prohibiting the sale, transfer, or loss of the vehicle with imposition(s) of appropriate penalties for violation of said restraining order; and/or (b) taking of a bond.

(Def. Mot., Exh. E.)  The post-seizure retention hearing was set for September 6, 2012 at

9:30 a.m.  (Def. Mot., Exh. E.)

For reasons unexplained in the Plaintiff's Complaint or in the Defendant's

exhibits, the Plaintiff's post-seizure retention hearing was adjourned to September 20,

2012.  (Def. Mot., Exhs. A, H.)  At the September 20, 2012 hearing, the Plaintiff

described the vehicle at issue in this action as a family car and indicated that he had a

separate work vehicle for his job with a construction company located in Southampton.

(Def. Mot., Exh. A.)  On the day of the seizure, August 23, 2012, the Plaintiff's vehicle

was located at his former address on Shinnecock Hill Road in Southampton, two houses away from the house where Ramirez lived.  (Def. Mot., Exh. A.)

According to the Plaintiff's hearing testimony, on August 23, 2012, using his work vehicle, the Plaintiff went to register the subject vehicle at the DMV, as the registration had expired two months prior.  (Def. Mot., Exh. A.)   The Plaintiff maintained that even though he left the keys in the vehicle, he did not give Ramirez permission to take his vehicle and that he was not home when Ramirez took it.  (Def. Mot., Exh. A.)  He also maintains that he was not aware that Ramirez did not have a license to operate a vehicle.  (Def. Mot., Exh. A.)  Apparently, August 23, 2012 was the second time Ramirez drove the Plaintiff's vehicle without the Plaintiff's permission. (Def. Mot., Exh. A.)

At the closing of the hearing, on behalf of the Defendant, Assistant County Attorney Jacqueline Caputi argued as follows:

> The County has shown probable cause for the stop and the issuance of the tickets based on the documents which were submitted into evidence.
> . . . .
> The Witness [the Plaintiff Reyes] testified that [ ] Ramirez, in fact, has operated his vehicle during the prior conviction [of operating a vehicle without a license].  So, clearly, he had knowledge that this person had an issue with his driver's license status and, nonetheless, he left the keys in an easy and accessible location and the vehicle was readily available to the person who lived only a minute away from him and was also related to him as his uncle.
> We have also shown a degree of facilitation here, as we would ask that you allow the County to retain the vehicle to ensure that the vehicle is available for a judgment of forfeiture, that it is kept in its current condition, and also to protect the public from this vehicle potentially being used by an unlicensed driver in the future.

(Def. Mot., Exh. A.)

Thereafter, the Magistrate assigned to the Plaintiff's case, John DiNoto (the "Magistrate"), issued a ruling on the record, finding that "[a]fter a hearing and based on the credible evidence adduced at the hearing . . . that there was, in fact, probable cause for the stop and the issuance of the tickets in this case." (Def. Mot., Exh. A.) In addition, the Magistrate held that "in this case, there was sufficient facilitation together with all the other facts of the case . . . to warrant the retention of the vehicle which will be followed by another proceeding to determine the final judicial determination of this matter." (Def. Mot., Exh. A.)

Also on September 20, 2012, the Magistrate memorialized his ruling on the record in a written determination (the "Determination"). (Def. Mot., Exh. F.) In the Determination, the Magistrate directed the County to retain the Plaintiff's vehicle pending the resolution of a forfeiture proceeding. (Def. Mot., Exh. F.) The sole basis provided in the Determination for the Magistrate's ruling was that "[p]robable cause for the stop and issuance of tickets has been shown by the evidence." (Def. Mot., Exh. F.)

Following the September 20, 2012 hearing and determination, it appears that the Plaintiff never challenged the Magistrate's ruling through an Article 78 proceeding pursuant to New York Civil Practice Law and Rules ("CPLR") § 7801. Rather, approximately four months later, on January 25, 2013, the Plaintiff commenced the instant action. On February 19, 2013, one month after the Plaintiff initiated this case, the Defendant began a civil forfeiture proceeding with respect to the Plaintiff's vehicle in the Supreme Court of the State of New York, County of Nassau. (Def. Mot., Exh. H.)

In his Complaint, the Plaintiff alleges that his hearing was inadequate in that the Defendant failed to comply with the standard set forth by SSCL § 270-26(B)(1) and in

the Second Circuit's decision in <u>Krimstock v. Kelly</u>, 306 F.3d 40 (2d Cir. 2002) (<u>Krimstock I</u>), which was thereafter adopted by district courts.  (Compl., ¶ 16.)  In this regard, the Plaintiff suggests that SSCL § 270-26(B)(1) requires the Defendant at a post-seizure retention hearing "to establish that: (a) the County is likely to succeed on the merits of a forfeiture action, (b) retention is necessary to preserve the vehicle from destruction or sale during the pendency of a forfeiture proceeding, and (c) no other measures would protect the County's interest during the proceedings."  (Compl., ¶ 15.)  The Plaintiff also claims that under the <u>Krimstock</u> line of cases, "a municipality cannot retain continued possession of a seized motor vehicle unless it affirmatively establishes at a hearing, before a neutral hearing officer: (a) the validity and probable cause for the underlying arrest and seizure; (b) that the municipality is likely to succeed on the merits of a forfeiture action and (c) that no means short of retention can protect the municipality's interests in the respective vehicle against destruction or sale during the pendency of a forfeiture proceeding."  (Compl., ¶ 14.)

Nevertheless, despite this standard, the Plaintiff argues that at his hearing, as well as at hearings in cases involving other vehicle owners, the County-appointed and trained Magistrates have only required the Defendant's Assistant County Attorneys to establish the probable cause prong before "shift[ing] the 'burden' of proof to the vehicle owner to establish hardship, in the absence of which, the [Magistrate] would direct the Defendant to retain possession of the vehicle at issue."  (Compl., ¶¶ 17–18.)  The Plaintiff further claims that the Magistrate was not neutral, because even in cases where the Magistrate ruled in favor of the vehicle owner, the Magistrate required the vehicle owner to sign a

standard release of general liability in favor of the Defendant before the vehicle in question would be returned.  (Compl., ¶¶ 56–57.)

## II. DISCUSSION

### A.  Legal Standard on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  In this regard, as suggested above, when deciding a motion to dismiss, a court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Iqbal, 556 U.S. at 678; Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).

As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679.  However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009) (quoting Iqbal, 556 U.S. at 678).

### B. The Legal Standard under Monell

Pursuant to the Supreme Court's holding in Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipal entity, like the Defendant in this case, may be held liable under 42 U.S.C. § 1983 where a plaintiff

demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." Id. at 694; see also Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (finding that in order to impose liability on a government entity under 42 U.S.C. § 1983, a plaintiff must "show two basic elements: (1) 'the existence of a municipal policy or custom . . .' and (2) 'a causal connection—an affirmative link— between the policy and the deprivation of his constitutional rights. ") (quoting Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)).

"The policy or custom need not be memorialized in a specific rule or regulation." Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir.1996) (citing Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir.1992)). Instead, such municipal policies "include[ ] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson,131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citation omitted).

Also, in "limited circumstances," a municipality can be liable under § 1983 for its failure "to train certain employees about their legal duty to avoid violating citizens' rights . . . ." Id.  For this reason, a policy, custom or practice of the entity may be inferred where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (quoting Kern, 93 F.3d at 44).

## C. The Legal Standard Under Krimstock and Subsequent Cases

In Krimstock I, the Second Circuit considered the practice by the City of New York (the "City") of seizing motor vehicles of individuals "accused of driving while intoxicated or of committing other crimes for which a motor vehicle could be considered

12

an instrumentality" and "maintain[ing] possession of these vehicles in the hope of one day gaining title to them by prevailing in civil forfeiture proceedings."  306 F.3d at 43–44.  The Second Circuit held that "the City's continued retention of vehicles after their warrantless seizure by the police and prior to the ultimate resolution of the forfeiture action in court" was an "intermediate deprivation, lasting months or sometimes years without any prompt hearing before a neutral fact-finder" and thus "constitutionally infirm."  Id. at 48.  Accordingly, the Second Circuit ordered that "[i]n the absence of a showing that continued impoundment constitutes a valid deprivation, seized vehicles must be released during the pendency of civil proceedings."  Id.

Further, the Second Circuit directed that the City provide "prompt post-seizure retention hearing[s], with adequate notice, for motor vehicles seized as instrumentalities of crime[.]"  Id. at 68–69.  In addition, the Second Circuit emphasized that the post-seizure retention hearings should provide vehicle owners with "independent and neutral review[.]"  Id. at 58.

While the court noted that "[t]here is no universal approach to satisfying the requirements of meaningful notice and opportunity to be heard in a situation such as this" and "[left] it to the district court" to decide what the parameters of an adequate post-seizure retention hearing should entail, the Second Circuit nevertheless "[held] at a minimum, the hearing must enable [motor vehicle owners] to test the probable validity of continued deprivation of their vehicles, including the City's probable cause for the initial warrantless seizure."  Id. at 69.  The Second Circuit suggested that in addition to evaluating whether probable cause existed for the initial warrantless seizure, an analysis of the probable validity of a retention might also involve considering the likelihood that

13

the City would succeed on the merits in a civil forfeiture action and whether "[the City's] interest in the accused instrumentality would not be protected by measures less drastic than continued deprivation." Id. at 49.

Following the Second Circuit's ruling in Krimstock I, on remand, the district court "fashioned what is now known as a 'Krimstock hearing.'" Krimstock v. Kelly, 506 F. Supp. 2d 249, 251 (S.D.N.Y. 2007) (Krimstock II). At such a hearing, a municipality

> has the burden to prove, by a preponderance of the evidence, that a) probable cause existed for the arrest of the vehicle's operator, b) it is likely the [municipality] would prevail in an action to forfeit the vehicle, and c) it is necessary that the vehicle remain impounded in order to ensure its availability in the eventual civil forfeiture action. The Second Circuit affirmed these procedures to the extent they governed vehicles seized as an "instrumentality of a crime."

Id. at 252 (citing Jones v. Kelly, 378 F.3d 198, 204 (2d Cir. 2004)).

The New York Court of Appeals has also set forth a legal framework for evaluating post-seizure deprivation procedures, which mirrors the Krimstock standard. In this regard, in County of Nassau v. Canavan, 1 N.Y.3d 134, 770 N.Y.S.2d 277, 802 N.E.2d 616 (N.Y. 2003), the Court of Appeals held that when retaining a vehicle, a municipality must "establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action, and that retention is necessary to preserve the vehicle from destruction or sale during the pendency of the proceeding." Id. at 144–45. Similarly, SCCL § 270-26(B)(1) directs "the neutral Magistrate to determine whether probable cause existed for the defendant's warrantless arrest, whether the County is likely to succeed on the merits of the forfeiture action, whether retention is necessary to preserve the vehicle from destruction or sale

14

during the pendency of the forfeiture proceeding, and whether any other measures would better protect the County's interest during the proceedings."

Since the establishment of the <u>Krimstock</u> hearing for cases involving the retention of vehicles pending the resolution of civil forfeiture actions, courts in this district have specifically addressed concerns raised by vehicle owners relating to the alleged inadequacy of the Defendant's post-seizure retention hearings. In this regard, in <u>Boyle v. County of Suffolk</u>, 10–CV–3606 (JS)(ARL), 2010 WL 4340627 (E.D.N.Y. Oct. 19, 2010), the plaintiff brought a 42 U.S.C. § 1983 action relating to the seizure of his vehicle. Although the plaintiff was afforded a post-seizure retention hearing, he sought a preliminary injunction directing the immediate return of his vehicle, alleging "that the County's post-seizure hearing procedures violated his First and Fourteenth due process rights to a properly conducted post-seizure hearing, as mandated by <u>Krimstock</u>." <u>Id.</u> at *1.

The <u>Boyle</u> court first observed that under the <u>Krimstock</u> standard, "due process requires the retention hearing to consider three issues: whether probable cause existed for the arrest of the vehicle operator; whether it is likely the [municipality] will prevail in an action to forfeit the vehicle; and whether it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture." <u>Id.</u> at *2 (citations and internal quotation marks omitted). It also observed that "[t]he burden of proof by a preponderance of the evidence as to these issues" remained with the municipality. <u>Id.</u> (citation omitted)

The <u>Boyle</u> court then proceeded to find that while the County had satisfied the first two prongs under <u>Krimstock's</u> framework, the County had failed to satisfy the final

prong of establishing that impounding the plaintiff's vehicle was necessary.  Id. at *4.

Accordingly, the Boyle court directed the Defendant County to either return the

plaintiff's vehicle within seven business days or else conduct a new retention hearing in

compliance with Krimstock and its progeny.  Id. at *6.

In Ferrari v. County of Suffolk, 790 F. Supp. 2d 34 (E.D.N.Y. 2011) (Ferrari I),

the Court again considered the post-seizure retention hearing procedures employed by the

Defendant County, this time in the context of a Fed. R. Civ. P. 12(b)(6) motion.  In

Ferrari I, the plaintiff alleged that

> as a matter of policy and practice, the County was not
> required at the [ ] retention hearing to meet its entire burden
> of demonstrating whether probable cause existed for [the
> plaintiff's] arrest, whether the County would likely succeed
> on the merits in its forfeiture action, whether retention was
> necessary to prevent the destruction or sale of the vehicle
> pending the forfeiture proceeding, and whether any less
> restrictive means existed for protecting the County's
> interest.

Id.  at 39 (citation and internal quotation marks omitted).  The Ferrari I plaintiff further

alleged that the Defendant "improperly shift[ed] onto him the burden of showing

hardship."  Id.

The Ferrari I court found that "[the plaintiff's] [c]omplaint pleads underlying

violations of both procedural and substantive due process."  Id. at *45.  Specifically, the

court surmised that, in relevant part, the following factual allegations by the plaintiff

were sufficient to state claims for violations of both procedural due process and

substantive due process:

> With respect to procedural due process, [the plaintiff]
> alleges that: . . . [(i)] in violation of Krimstock, the County
> failed to establish, by a preponderance of the evidence, that
> retention was to prevent the car's destruction or sale; and

> [(ii)] Justice DiNoto failed to make a statement of findings covering two of <u>Krimstock's</u> three prongs. And, with respect to substantive due process, [the plaintiff] successfully pleads that the County obtained impoundment because Justice DiNoto failed to apply settled law, and instead may have relied on the County's multiple, egregious misstatements of the law.

<u>Id.</u> at 45 (citation and internal quotation marks omitted).  The <u>Ferrari I</u> court also determined that the Plaintiff had "properly [pled] a Section 1983 claim against a municipality," since he not only "allege[d] that Suffolk County knowingly trains and/or deliberately permits, the hearing officer who preside over retention hearings to deliberately and systematically refuse to comport with the requirements of Due Process or the [SCCL]," but also claimed "that Suffolk County deliberately permits its hearing officers to violate <u>Krimstock</u>."  <u>Id.</u> at 45–46 (citation and internal quotation marks and brackets omitted).

In the more recent decision of <u>Ferrari v. County of Suffolk</u>, No. 10–CV–4218(JS)(GRB), 2013 WL 4017022 (E.D.N.Y. Aug. 6, 2013) ("<u>Ferrari II</u>"), the court further considered the claims brought by the plaintiff in <u>Ferrari I</u> while resolving the parties' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56.  With respect to the plaintiff's substantive due process claim, the Ferrari II court granted summary judgment in favor of the County, because "[the] [p]laintiff's property interest in his vehicle is not the type of fundamental right subject to substantive due process protections."  <u>Id.</u> at *9.

As to the plaintiff's procedural due process claim, the <u>Ferrari II</u> court held that "[the Assistant County Attorney's] failure to establish by a preponderance of the evidence that retention was necessary, and [Magistrate] DiNoto's failure to make findings

on the record regarding <u>Krimstock's</u> second and third prongs all constitute[d] violations of [the] [p]laintiff's right to procedural due process." <u>Id.</u> at *7. While the court found that for the purposes of establishing <u>Monell</u> liability, "[the] [p]laintiff ha[d] failed to establish a pattern or practice of hearing officers failing to issue a statement of findings" or to establish that the County had failed to train its hearing officers, it nevertheless concluded "that [the] [p]laintiff ha[d] established that the County ha[d] a widespread practice of failing to meet its burden under <u>Krimstock.</u>" <u>Id.</u> at *10–11.  As such, the court "grant[ed] summary judgment in favor of [the] [p]laintiff on his procedural due process claim arising out of the County's failure to establish its burden at his retention hearing[.]" <u>Id.</u> at *11.

It is with this legal framework in mind that the Court now proceeds to consider the Defendant's Rule 12(b)(6) motion to dismiss and the sufficiency of the Plaintiff's Complaint.

## C. As to Whether the Plaintiff was Required to Bring an Article 78 Proceeding

As an initial matter, in this case, the Defendant argues that the Plaintiff was required to first challenge the Determination by bringing an Article 78 proceeding before initiating this action.   In this regard, the Defendant asserts that "[t]he fact that [the] Plaintiff failed to avail himself of State procedural remedies" in order "to challenge the post-seizure determination [ ] precludes" him from now brining a procedural due process claim,  (Def. Mem. at 18.)  The Court disagrees.

"In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case."  <u>Brady v.</u>

Colchester, 863 F.2d 205, 211 (2d Cir. 1988) (citations and internal quotation marks and

alterations omitted) (emphasis in original).  However, where a plaintiff "was free to bring

an Article 78 mandamus proceeding in New York State court" but did not, generally the

plaintiff "cannot now be heard to complain of a denial of procedural due process."

Nenninger v. Port Jefferson, 509 F. App'x 36, 39 n.2 (2d Cir. 2013); see also Orange

Lake Assocs. v. Kirkpatrick, 825 F. Supp. 1169, 1179 (S.D.N.Y. 1993) ("Since Plaintiff's

claim in this case is procedural, an article 78 hearing was available in state court and

there can be no procedural due process violation.").

Nevertheless, "[w]hen the deprivation occurs in the more structured environment

of established state procedures, rather than random acts, the availability of

postdeprivation procedures will not, ipso facto, satisfy due process."  Hellenic Am.

Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996).  In this

regard, the court in Ferrari II explained as follows:

> Although the Second Circuit has held that an Article
> 78 proceeding generally satisfies due process if the
> deprivation is caused by random, unauthorized state
> conduct, an Article 78 proceeding is not sufficient where it
> is the state system itself that destroys a complainant's
> property interest, by operation of law.
> In the present case, the issue is not whether
> [Magistrate] DiNoto was a lone judge who randomly
> misapplied the law or whether [the] Assistant County
> Attorney [ ] arbitrarily attempted to shift the burden to [the]
> [p]laintiff.  If this were the case, the County's argument
> that the availability of a state remedy bars any due process
> claim would be much stronger. Rather, the issue is whether
> the County's procedures for vehicle retention hearings, in
> fact, ignore Krimstock and the [SSCL].  Because the
> deprivation here is allegedly systemic, and not random, the
> availability of an Article 78 proceeding does not bar
> Plaintiff's claim.

Ferrari II, 2013 WL 4017022, at *8 (citations and internal quotation marks omitted).

Accordingly, because the Plaintiff here, like the plaintiff in <u>Ferrari II</u>, alleges that the Defendant's procedural due process violations are systematic as opposed to random, the Court finds that the Plaintiff was not required to first initiate an Article 78 proceeding before commencing this action.  As such, the Court declines to grant the Defendant's Rule 12(b) motion to dismiss on this basis.

## D. As to Whether the Plaintiff has Stated a Procedural Due Process Claim

A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard.  <u>See</u> <u>B.D. v. DeBuono</u>, 130 F. Supp. 2d 401, 432–33 (S.D.N.Y. 2000). To prevail on a procedural due process claim, a plaintiff must show that he or she possessed a protected liberty or property interest and was deprived of that interest without due process of law.  <u>Kassim v. City of Schenectady</u>, 255 F. Supp. 2d 32, 37 (N.D.N.Y.2003) (citing <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 285–86 (2d Cir. 2001) (internal citations omitted)).

Based on the factual assertions in the Plaintiff's Complaint and the exhibits included in the Defendant's motion to dismiss, the Court finds that the Plaintiff has successfully stated a claim for violation of procedural due process pursuant to 42 U.S.C. § 1983.  In the Court's view, the Plaintiff has adequately alleged that he has a property interest in his vehicle and that during his post-deprivation hearing, the Defendant failed to satisfy its burden under <u>Krimstock</u>.  Nothing in the Defendant's exhibits contradict these allegations.  Rather, a review of the September 20, 2012 hearing transcript reveals that the Assistant County Attorney was not required to establish, by a preponderance of the

evidence, the three <u>Krimstock</u> prongs, nor did the Magistrate consider all these prongs in rendering his ruling on the record or in the Determination.

In this regard, at the hearing, the Assistant County Attorney only appears to have presented evidence demonstrating (1) that there was probable cause for the seizure of the Plaintiff's vehicle and (2) that there existed some degree of facilitation by the Plaintiff in allowing Ramirez easy access to the Plaintiff's vehicle even though Ramirez did not have a license.  While it could be argued that the Assistant County Attorney at least addressed the first two prongs of <u>Krimstock</u> – that is, that there was probable cause for the seizure of the Plaintiff's vehicle and that the Defendant would likely prevail in a civil forfeiture action since the Plaintiff facilitated Ramirez's illegal use of the Plaintiff's vehicle – nothing presently before the Court suggests that the Assistant County Attorney satisfied the Defendant's burden of establishing, by a preponderance of the evidence, that it was necessary for the Plaintiff's vehicle to remain in the Defendant's possession so as to ensure its availability in the eventual civil forfeiture action.  <u>See</u> <u>Krimstock II</u>, F. Supp. 2d at 252.

The Magistrate also did not comply with <u>Krimstock</u>, in that, on the record, he only found that probable cause existed and that there was sufficient facilitation by the Plaintiff to warrant the retention of the vehicle pending the civil forfeiture proceeding. His Determination was even sparser, since it only acknowledged the probable cause prong from <u>Krimstock</u>.  At no point did the Magistrate consider whether the retention of the Plaintiff's vehicle was necessary to prevent the destruction or sale of the Plaintiff's vehicle or if there were any other less restrictive means to protect the vehicle during the pendency of the civil forfeiture action, as required by <u>Krimstock</u>.  <u>See id.</u> at 252.

As discussed above, assuming the Plaintiff's allegations are true, the Defendant's

failure to satisfy and/or recognize this final prong constitutes a procedural due process

violation.  To expound on the court's decision in <u>Boyle</u>, in the context of resolving the

plaintiff's motion for a preliminary injunction against the same Defendant County, the

court specifically held as follows:

> Unfortunately for the County, <u>Krimstock</u> and the
> applicable state law sets forth three prongs that the County
> must meet, not two.  Under the third prong, the County
> must establish by a preponderance of the evidence, that it is
> necessary that the vehicle remain impounded in order to
> ensure its availability for a judgment of forfeiture.  Here,
> the Court finds that this prong was not met.  Thus, Mr.
> Boyle has shown not only a likelihood of success on the
> merits, but a certainty of success.

<u>Boyle</u>, 2010 WL 4340627, at *4.  This reasoning applies to the instant case, and thus, the

Plaintiff's Complaint adequately pleads a procedural due process violation on the part of

the Defendant.

Particularly instructive here is the court's decision in <u>Ferarra I</u>, where, when

confronted with similar factual allegations by another plaintiff, the court denied the

Defendant's Rule 12(b)(6)'s motion to dismiss the plaintiff's procedural due process

claim.  790 F. Supp. 2d at 45.  Indeed, as discussed above, the <u>Ferarra I</u> court found the

complaint to be sufficient because the plaintiff alleged (1) that "in violation of <u>Krimstock</u>,

the County failed to establish, by a preponderance of the evidence, that retention was to

prevent the car's destruction or sale" and (2) that the Magistrate, who happens to be the

same Magistrate involved in the present case before this Court, "failed to make a

statement of findings covering two of <u>Krimstock's</u> three prongs," and instead based his

determination solely on whether probable cause existed for the seizure of the vehicle.  <u>Id.</u>

22

As the Plaintiff here makes substantially similar allegations in his Complaint, the Court sees no reason why it should stray from the holding by the Ferrari I court.

However, the Court finds that the Plaintiff may not proceed on his procedural due process claim based on any theory challenging the Defendant's purported practice of requiring motor vehicle owners who prevailed at the post-seizure retention hearings to sign general releases of liability in favor of the Defendant.  This is because the Plaintiff lacks standing to assert a procedural due process claim based upon this theory, as it appears he was never subject to this specific alleged noncompliance with Krimstock.  See Steel Inst. of New York v. City of New York, 832 F. Supp. 2d 310, 335 (S.D.N.Y. 2011) aff'd, 716 F.3d 31 (2d Cir. 2013) (noting that the Second Circuit has "interpreted the rights § 1983 secures to be personal to those purportedly injured") (quoting Nnebe v. Daus, 644 F.3d 147 (2d Cir. 2011)) (internal brackets omitted).

For similar reasons, the Plaintiff also cannot proceed on any theory that relies on allegations that the Defendant attempted to shift the burden to vehicle owners to demonstrate hardship, since the Defendant's exhibits reveal that the Plaintiff was not subject to this alleged improper burden shifting at his own hearing.  Id.

**E. As to Whether the Plaintiff has Stated a Substantive Due Process Claim**

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'"  Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995) (quoting Lowrance v. Achtyl, 20 F.3d 529, 538 (2d Cir. 1994)). In this regard, "[s]ubstantive due process standards are violated only by conduct

that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."
Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).

In order to allege a property interest sufficient to support a substantive due process claim, the plaintiff must allege that it had a valid property interest in the benefit in question.  See Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999); DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 130 (2d Cir. 1998); Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).  If the Court finds that the plaintiffs had an adequate property interest, then the plaintiffs still must allege that the defendants acted in an arbitrary or irrational manner in depriving the plaintiffs of that interest. See Lisa's Party City, 185 F.3d at 17; Natale, 170 F.3d at 263.

However, as stated above, the Ferrari II court held as follows:

> Not all property rights [ ] are entitled to the protections of substantive due process.  Substantive due process protects only those interests that are implicit in the concept of ordered liberty, i.e., those rights that are so rooted in the traditions and conscience of our people as to be ranked as fundamental,  The Court finds that Plaintiff's property interest in his vehicle is not the type of fundamental right subject to substantive due process protections.

2013 WL 4017022, at *9 (citations and internal quotation marks omitted); Venghaus v. City of Hartford, 3:06CV01452 DJS, 2012 WL 1050014, at *8 (D. Conn. Mar. 27, 2012) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.") (quoting Albright v. Oliver, 510 U.S. 266, 271–72, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)).

Therefore, since the Complaint alleges that the Plaintiff's property interest is the use and possession of his vehicle, he has failed to state a claim for violation of substantive due process.  As a consequence, the Court grants the Defendant's motion to dismiss with respect to this substantive due process claim and dismisses it pursuant to Fed. R. Civ. P. 12(b)(6).

**F. As to Whether the Plaintiff's Procedural Due Process Claim Satisfies Monell**

As the Court discussed at length above, "to hold a municipality liable [under § 1983], a plaintiff is required to plead [ ] three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Ferrari II, 2013 WL 4017022, at *10 (quoting Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)).  In the Court's view, the Plaintiff in this case has satisfied this requirement so that his procedural due process claim may survive at this stage of the litigation.

Instructive in this case is the court's holding in Ferarri I, a decision which this Court revisits once again.  Faced with similar allegations in the complaint as those at issue in the instant action, the Court found that the plaintiff had properly pled his 42 U.S.C. § 1983 claim against the Defendant County.  Ferarri I, 790 F. Supp. 2d at 45.  In this regard, the Ferrai I court explained as follows:

> [The plaintiff] alleges that Suffolk County knowingly trains
> and/or deliberately permits, the hearing officers who
> preside over retention hearings to deliberately and
> systematically refuse to comport with the requirements of
> Due Process or the Suffolk County Code. And, although
> [the plaintiff] does not plead much factual detail concerning
> Suffolk County's training programs, it is unlikely that a
> plaintiff would have information about the [county's]
> training programs or about the cause of the misconduct at
> the pleading stage. Thus, a plaintiff need only plead that the

> [county's] failure to train caused the constitutional
> violation in order to plead municipal liability.

Ferrari I, 790 F. Supp. 2d at 45 (citing Amnesty America v. Town of West Hartford, 361

F.3d 113, 130 n.10 (2d Cir. 2004)) (internal quotation marks and brackets omitted).

In addition, the Ferrari I court concluded that the plaintiff's allegation that the

Defendant County had a widespread practice of deliberately permitting its Court-

appointed Magistrates to violate Krimstock was "not conclusory[,]" but instead was

"augment[ed] by [the Plaintiff's] [identification], without the benefit of discovery, of two

other instances in which [the Defendant County's] supposedly neutral hearing officers

failed to properly apply Krimstock." Id. at 46.  According to the court, "[t]hree instances

(including [the] [p]laintiff's own claim) might not suffice to overcome summary

judgment[,] [b]ut, at [the motion to dismiss] stage, . . . permit[ted] a plausible inference

of a widespread practice or informal custom within Suffolk County." Id. (citation

omitted).

In similar fashion, the Plaintiff here alleges that the Defendants trained its

Assistant County Attorneys as well as the County-appointed Magistrates to ignore and

disregard the standard set forth by Krimstock and subsequent cases.  The Plaintiff's

Complaint also contains more than three examples of instances involving other motor

vehicle owners where the County-Appointed Magistrates and Assistant County Attorneys

applied a less stringent standard than the one laid out by Krimstock.  Thus, the Plaintiff's

satisfactorily pleads Monell liability for his 42 U.S.C. § 1983 procedural due process

claim.

**G.  As to Whether the Plaintiff has Standing to Assert a Claim for a Declaratory Judgment and Permanent Injunctive Relief**

Finally, in this case, the Plaintiff seeks a declaratory judgment and permanent injunctive relief enjoining the Defendant's from committing future procedural due process violations like the ones he allegedly experienced at his own post-seizure retention hearing.  However, "the [P]laintiff lacks standing to seek injunctive relief," since his "complaint is wholly devoid of any allegation that he will likely be subject to future [seizures of his vehicle] and thus 'immediately in danger of sustaining some direct injury.'"  Ward v. Murphy, 330 F. Supp. 2d 83, 98 (D. Conn. 2004) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 103, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)).

Relevant here, in Lyons, the Supreme Court of the United States found that the Plaintiff lacked standing to seek prospective injunctive relief enjoining the Los Angeles Police Department (the "LAPD") from using an unlawful choke hold like the one it had allegedly used on the plaintiff.  461 U.S. at 99, 106.  The Supreme Court reasoned that the plaintiff lacked standing because he made no allegation that he was likely to suffer future injury from the LAPD's administration of the choke hold and only relied on allegations concerning the LAPD's past use of the choke hold.  Id. at 106.

The Second Circuit has also provided additional guidance, as follows:

> Standing requires, inter alia, that the plaintiff show an actual or imminent injury in fact, and when seeking prospective injunctive relief, the plaintiff must prove the likelihood of future or continuing harm.  Although past wrongs may serve as evidence bearing on whether there is a real and immediate threat of repeated injury, such evidence does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.

Pungitore v. Barbera, 506 F. App'x 40, 41–42 (2d Cir. 2012) (citations and internal quotation marks and ellipse omitted).

Accordingly, because there is no allegation by the Plaintiff that he will personally suffer future injury and because "a plaintiff with no claim of his own lacks standing to assert the rights of others," the Court grants the Defendant's motion to dismiss the Plaintiff's third cause of action.  Ribeiro v. Travis, No. 00 Civ. 6763(AGS), 2001 WL 893366, at *3 (S.D.N.Y. Aug. 8, 2001) (citations omitted).

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the motion by the Defendant to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) is granted in part and denied in part.  The Court dismisses the Plaintiff's substantive due process claim and claim for declaratory judgment and permanent injunctive relief, but declines to dismiss the Plaintiff's procedural due process claim.  The Court finds that the Plaintiff has stated a viable 42 U.S.C. § 1983 claim that the Defendant violated his procedural due process rights under the Fourteenth Amendment of the United States Constitution and for municipal liability under Monell.

**SO ORDERED.**
Dated: Central Islip, New York
February 6, 2014

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge